NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DAVID ELLIOTT,

    Plaintiff,

      v.

DELSEA ARENA, INC. d/b/a
FRANKLIN SKATING CENTER,

    Defendant.

CIVIL ACTION NO. 03-4917 (SSB)

OPINION REGARDING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

APPEARANCES:

Alfred v. Altopiedi, Esq.
ALFRED V. ALTOPIEDI, P.C.
900 Old Maple Road
Springfield, PA 19064
    FOR THE PLAINTIFF

Lary I. Zucker, Esq.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
Woodland Falls Corporate Park
200 Lake Drive East, Suite 300
Cherry Hill, NJ 08002
    FOR THE DEFENDANT

      BROTMAN, DISTRICT JUDGE

I.    FACTUAL AND PROCEDURAL BACKGROUND

    This negligence suit arises from an injury sustained while plaintiff was roller

skating at defendant's premises.  On October 27, 2002 Plaintiff David Elliott
("Elliott") entered the Franklin Skating Center and rented roller skates from
Defendant Delsea Arena, Inc.  (Pl.'s Compl. at ¶ 6.)  Plaintiff was asked to sign a
"Waiver and Release to Roller Skate" (hereafter "the Release") before being
allowed to skate.  (Def.'s Br. in Supp. of Mot. for Summ. J. at ¶ 5,  Pl.'s Compl. at
¶¶ 2,3).  Elliott signed the Release without reading it.  (Def.'s Br. in Supp. of Mot.
for Summ. J. at ¶ 5).   Around 10:15 p.m. an accident occurred.  (Pl.'s Compl. at ¶
6.)  Elliott had been "using the rented roller skates, when suddenly and without
warning, the wheels on the roller skates locked up/jammed causing Plaintiff to fall
to the ground with great force..." (Id.)  Plaintiff alleges that he sustained an ankle
fracture requiring surgery and that he suffered "great pain and agony".  (Pl.'s
Compl at ¶ 8.)

Plaintiff's Complaint includes several theories of recovery.  Specifically,
Elliott complains that Defendant: a) failed to "properly maintain" the roller skates,
b) failed to "properly inspect the skates", c) failed to "warn Plaintiff ...of the
dangerous condition of the roller skates...", d) failed to "properly service and repair
the roller skates", e) failed to "insure that the roller skates rented to Plaintiff
operated in a safe and proper manner", f) failed "to provide adequate safeguards
to prevent injury", g) "disregarded the safety and rights of the Plaintiff" and others,
and h) failed "to recognize and follow the applicable standard...regarding
inspection, maintenance, service and repair of rental skates."

In its Motion for Summary Judgment, defendant Delsea challenges the

complaint on two grounds.  First, Delsea argues that the Waiver plaintiff signed

released defendant from all claims for negligence.  Second, defendant Delsea

asks this court to grant it partial summary judgment on Plaintiff's wage loss

claims.[1]

II.    THE LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment

is appropriate when the evidence contained in the record shows that "there is no

genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  Serbin v. Bora Corp., 96 F.3d 66, 69 n.2 (3d Cir.

1996) and Fed. R.C.P. 56.  The threshold inquiry is whether there are "any

genuine factual issues that properly can be resolved only by a finder of fact

because they may reasonably be resolved in favor of either party."  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Judicial consideration of summary

judgment motions requires that all reasonable inferences from facts placed before

the court must be drawn in favor of the non-moving party.  See Lujan v. National

Wildlife Federation, 497 U.S. 871, 888 (1990).

Once the moving party has met its burden of establishing the absence of a

genuine issue of material fact, "its opponent must do more than simply show that

---

[1] This motion has become moot since plaintiff, through a letter and notice to the Court,
has voluntarily withdrawn his wage loss claims.  As plaintiff wrote in his opposition brief:

Plaintiff hereby withdraws its claim for wage loss, rendering Defendant's Motion
for Partial Summary Judgement on this issue moot.  Plaintiff informed Defendant
by letter dated November 11, 2004 of his intention to withdraw the wage loss
claim.   (Pl.'s Br. In Opp. at 14)

there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus.

Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Several Supreme Court

cases have held that a summary judgment motion should be granted unless the

party opposing the motion "provides evidence 'such that a reasonable jury could

return a verdict in favor of the nonmoving party.'" See, e.g., Lawrence v. National

Westminster Bank New Jersey, 98 F.3d 61, 65 (3d Cir. 1996) (quoting Anderson,

477 U.S. at 248).  In other words, the non-moving party must "make a showing

sufficient to establish the existence of [every] element essential to that party's

case, and on which that party will bear the burden of proof at trial."  Serbin, 96

F.3d at 69 n. 2 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  If the

evidence presented by the non-movant is sufficient to form the basis of a jury

finding in favor of the non-moving party, summary judgment is inappropriate.  On

the other hand, if the non-movant's evidence on any essential element of the

claims asserted is merely "colorable" or is "not significantly probative," the court

must enter summary judgment in favor of the moving party.  Anderson, 477 U.S. at

249-50;  see also Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)

(observing that non-movant's effort to defeat summary judgment may not "rest

upon mere allegations, general denials, or vague statements").

III.    DISCUSSION

        A. The Parties' Arguments in Detail

        Defendant Delsea asks this court to hold that "all claims for negligence

against defendant are barred by the Waiver and Release to Roller Skate that

4

plaintiff signed before skating at defendant's premises." (Def.'s Br. in Supp. of Summ. J. at p.9.) After that simple and clear statement of purpose Defendant then devotes fourteen pages of its brief to analyzing why the Release is a valid and enforceable contract under New Jersey law.

Plaintiff opposes defendant's Summary Judgment motion on two distinct grounds. First, Elliott argues that the Release is invalid and unenforceable because it contravenes public policy. In particular, plaintiff believes the Release violates the policy behind N.J.S.A. 5:14-4(k), which charges renters of roller skates, "to the extent practicable to check rental skates on a regular basis to insure the skates are in good mechanical condition." Plaintiff's second argument relates closely to his first argument.[2] In short, plaintiff's second argument is that the Release has "nothing...to do with the Defendant's duty to maintain their [sic] rental equipment." (Pl.'s Opp. Br. at 8.) Elliott urges the Court to find that "there is a material question of fact as to whether Defendant's maintenance of rental skates would even be covered under the Waiver and Release". (Pl.'s Br. In Opp. to Mot. for Summ. J. at 13.)

Defendant's reply brief counters that plaintiff cannot prove that the roller skate was defective. Defendant concludes that since plaintiff cannot prove that the roller skate was defective, that the "faulty-maintenance claim cannot

_____

[2] Although it is not entirely clear, a close reading and re-reading of plaintiff's brief suggests that plaintiff's second argument is actually an alternative argument to his public policy argument. The two arguments relate in the following way. The first argument seems to assume that the Release applies to plaintiff's claims. Assuming that it applies, plaintiff argues that enforcing the Release would contravene the public policy of N.J.S.A. 5:14-4(k). Relatedly, plaintiff appears to argue in his second contention that the Release does not apply at all to his negligence claims.

succeed".[3]   (Def.'s Rep. Br. at 7.)  Defendant Delsea also challenges the opinions of plaintiff's experts.

      B.      Applicability of the Waiver and Release to Plaintiff's Claims

The Court begins its evaluation of the parties arguments by examining the applicability of the Waiver and Release to Plaintiff's Claims.  If the waiver does not apply then defendant's motion should be denied.  If the waiver does apply, however, then the Court will analyze whether the Release would be enforceable under New Jersey law.

By executing the Waiver and Release plaintiff agreed "to assume all risks and responsibility for any injury or other damages...sustain[ed]...including anything in connection with equipment rented from the above entities or their affiliates." (Release ¶ 1.)  The Release also provides in  ¶ (2) that plaintiff releases the defendant from "all claims of liability for any injuries....sustain[ed]...in connection with" his activities at the Franklin Skating Center.  Moreover, ¶ (2) specifically includes injuries "caused from any equipment" rented, even if the injuries were "caused in whole or in part by the negligence or fault of the Releasees, their employees, or instructors."  (Release ¶ 2.)

The Court finds that the Release applies to plaintiff's claims.  Both the Release language and the nature of plaintiff's claims and support this conclusion. Plaintiff essentially claims that the skates "locked up/jammed" because the skates were unsafe and improperly maintained.  In addition, plaintiff claims that

---

[3] After careful consideration the Court determines that this argument was raised for the first time in defendant's reply brief.

defendant failed to properly inspect the skates.  Thus, according to the Complaint, plaintiff's fall and subsequent injury are directly attributable to the skates he rented from defendant.  The plain meaning of the Release would bar any injury "in connection with equipment rented from" defendant.  This plainly would include an injury caused by the skates, which plaintiff rented from defendant.

C.  Enforcing the Waiver to Bar Plaintiff's Claim

As recounted previously, Defendant urges the Court to find that the Waiver and Release is valid and enforceable against Elliott.  Arguing that New Jersey case law governs the issue, defendant cites the case McBride v. Minstar, Inc., 662 A. 2d 592 (N.J. 1994), as controlling.  Before analyzing McBride and the parties' arguments, however, the Court endeavors to place McBride in context by synthesizing the body of New Jersey case law on enforcing waivers and releases.

In New Jersey a release is generally binding and "the releasor will be held to the terms of the bargain he willingly and knowingly entered."  Raroha v. Earle Finance Corp., 47 N.J. 229, 234 (N.J. 1966)(citations omitted).  There are limited exceptions to this general rule.  Those exceptions include when a releasee commits fraud, overreaching, or misrepresentation.  Id.  Moreover, if the releasor is shown to suffer from "incapacity affecting his ability to understand the meaning of the release" the releasor may also avoid being held to the terms the "bargain he willingly and knowingly entered."  Id.  This led then-Magistrate and present District Court Judge Kugler to state that "a signed release carries considerable weight" in New Jersey.  Cooper v. Borough of Wenonah, 977 F. Supp. 305, 311 (D.N.J.

7

1997)[4].

In McBride, the New Jersey Superior Court established a four factor test to determine whether a waiver and release is valid.  According to McBride the validity of a release depends upon four factors:

1.    The existence of a duty to the public on the part of the party seeking to avoid liability for failing to fulfill that duty, i.e., the clause will not be enforced if to do so would contravene public policy;
2.    the nature of the goods provided or service performed;
3.    the circumstances surrounding the formation of the contract, i.e. whether the contract was fairly formed into; and
4.    whether the intentions of the parties are expressed in clear and unambiguous language.

McBride at 600.  Defendant argues that, when applied to this case, all of the factors support a finding that the release Elliott signed is valid and enforceable. Plaintiff Elliott, on the other hand, interprets New Jersey law differently.   Seizing on the first factor, Plaintiff argues that the Release contravenes the public policy of New Jersey as codified in N.J.S.A. 5:14-4(k).

If the Court finds that applying the Release violates public policy then defendant's Motion for Summary Judgment should be denied.  If, on the other hand, the Court determines that the four factors support the conclusion that the Release is valid then defendant's motion should most likely be granted.[5]  The starting point for the instant inquiry is therefore whether the public policy of New

_____

[4] This District Court case is cited as a synthesis of the then-existing case law in New Jersey.  Consequently, the quoted passage offers insight into what the law was when McBride was decided even though McBride was actually decided three years before the Cooper case.

[5] If the analysis of the four factors suggested the Release was valid then the Court would still consider whether a genuine issue of material fact persisted such that defendant's motion should be denied.

Jersey would be violated by allowing waivers and releases to bar claims against operators of roller skating facilities for failing to maintain or negligently maintaining the roller skates it rents.[6]  Since plaintiff claims that the public policy of New Jersey is found in the "New Jersey Roller Skating Rink Safety and Fair Liability Act", the Court analyzes the content of N.J.S.A. § 5:14-1 (2005) (hereafter referred to as "the Roller Skating Act" or "RSA").

The express purpose of the RSA is articulated in § 5:14-1.  In § 5:14-1, the New Jersey legislature stated the following reasons for passing the RSA:

> In order to make it economically feasible for insurance companies to provide coverage to roller skating rinks, the incidence of liability should be more predictable.  That predictability may be achieved by defining the limits of the liabilities of roller skating rink operators in order to encourage the development and implementation of risk reduction techniques.[7]

This provides the lens through which N.J.S.A. § 5:14-4 must be viewed.

---

[6]  N.J.S.A. § 5:14-3 defines operator as "a person or entity who owns, manages, controls or directs or who has operational responsibility for a roller skating rink."

[7] Significantly, Section 5:14-2 of the RSA begins with the following "findings, declarations":

> a. The Legislature finds and declares that the recreational sport of roller skating is practiced by a large number of citizens of this State; provides a wholesome and healthy family activity which should be encouraged, and attracts to this State a large number of nonresidents, significantly contributing to the economy of this State. Therefore, the allocation of the risks and costs of roller skating is an important matter of public policy.

> b. The Legislature finds and declares that roller skating rink owners face great difficulty in obtaining liability insurance coverage, and that when such insurance coverage is available, drastic increases in the cost of the insurance have taken place and many roller skating rink owners are no longer able to afford it.

> This lack of insurance coverage adversely affects not only the roller skating rink owners themselves, but also patrons who may suffer personal injury and property damage as a result of accidents which occur on the premises of the roller skating rink.

Section 5:14-4 of the RSA imposes certain responsibilities on operators of roller skating rinks.  For example, under § 5:14-4 (d) operators are charged with "[m]aintain[ing] the skating surface in reasonably safe condition..."  More relevantly for this suit, under N.J.S.A. § 5:14-4(k), operators must "[c]heck rental skates on a regular basis to insure the skates are in a good mechanical condition."  The parties disagree about the effect of § 5:14-4(k) on the validity of the waiver and release.

Plaintiff argues that  N.J.S.A. § 5:14-4(k) imposes an affirmative duty that prohibits roller skating rink operators from disclaiming their liability for accidents caused by improperly maintained skates.  In short, plaintiff contends that § 5:14-4(k) manifests the public policy for the State of New Jersey.  Defendant responds that the "plaintiff must prove every element necessary to sustain its burden of proof" and that to sustain its "faulty maintenance" claim that plaintiff must "show that the skate was defective".  Arguing that plaintiff cannot show that the skate was defective, defendant persists its pursuit of summary judgment.

The court agrees with plaintiff for the purposes of deciding this motion.  As a matter of law,  N.J.S.A. § 5:14-4(k) precludes applying a release such as the one at issue in this case, to claims arising from an operator's faulty maintenance of roller skates.  This interpretation is not only consistent with New Jersey case law but also effectuates the express purpose of the RSA by making the incidences of liability more predictable.  Moreover, the structure of the RSA confirms that this is the correct reading.

For example, the statutory language allows operators to avoid liability (and

for skaters to assume the risk of injury) for "injuries which result from incidental contact with other roller skaters or spectators [and] injuries which result from falls caused by loss of balance..." N.J.S.A. § 5:14-6. Section 5:14-4(k), however, allows operators to be held liable for faulty maintenance. Consistent with its intent to make the incidents of liability predictable, the New Jersey legislature defined the classes of injuries that operators or roller skating rinks would and would not be liable. The Court is therefore persuaded that § 5:14-4(k) manifests the public policy of New Jersey that operators cannot release and/or disclaim liability for faulty maintenance. For this reason, defendant's Motion for Summary Judgment must be denied.[8]

Defendant makes an additional argument that the Court does not find persuasive. Essentially, in methodically analyzing each of the four McBride factors, defendant alleges that the factual similarities between this case and McBride require the Court to reach the same result as McBride and hold the waiver and release valid and effective. Counsel's analysis overlooked a detail this Court finds particularly significant. As is now true in this case, the New Jersey Superior Court in McBride also allowed the question of the validity of the release

---

[8] Defendant's contention that plaintiff cannot prove the skates to be faulty, is procedurally deficient. That argument was raised for the first time in defendant's reply brief. Consistent with the practice of federal courts, and since plaintiff lacked the opportunity to respond, the Court will not consider this argument first raised in a reply brief. See e.g. Santiago v. City of Vineland, 107 F. Supp. 2d 512, 529 n.6 (D.N.J. 2000)(citations omitted). Nonetheless, defendant's motion is denied without prejudice to re-file a motion for summary judgment based on plaintiff's inability to prove a defect in the skates and/or maintenance of the skates.

to survive the summary judgment phase of proceedings.[9]  The McBride court

stated that one of the defendants, Raichle "moved for summary judgment,

asserting that the claim should be barred because the agreement between

McBride and the Chalet contained an exculpatory clause."  McBride at 595.  The

court then noted that the summary judgment "motion was denied" and that the

case came before the court for trial on May 16, 1994.  Id.  For this reason, the

Court does not find defendant's comparison of McBride to this case to be at all

persuasive.

IV.     CONCLUSION

        The New Jersey Legislature's imposed a duty on skating rink operators.  In

making all reasonable inferences in favor of the Plaintiff, the Court holds that New

Jersey law does not allow operators of roller skating rinks to disclaim their duty to

maintain their roller skates.  Consequently, defendant's Motion for Summary

Judgment is denied.


Dated:   June 13, 2005


                                         _____
                                                        /s/
                                         HON. STANLEY S. BROTMAN
                                         UNITED STATES DISTRICT JUDGE


_____

    [9] The Court finds that this small point from McBride simply undermines much of
defendant's arguments as to why the release is valid.  This should not in any way imply that the
Court relied on McBridge to find that the Release in this case is invalid with respect to the faulty
maintenance claims.